## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BENJAMIN J. GRUHN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 08-CV-673-TLW |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

### OPINION AND ORDER

Plaintiff Benjamin J. Gruhn seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. §636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.[1]  [Dkt. # 10].

Plaintiff was denied benefits pursuant to the Contract with America Advancement Act of 1996 ("CAAA"), 42 U.S.C. § 423(d)(2)(C)(1997). The CAAA amended the Social Security Act to preclude disability benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C.§ 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to

---

[1] Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially, and upon reconsideration. A hearing before Administrative Law Judge ("ALJ") Lantz McClain was held on November 2, 2007. By decision dated February 29, 2008, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied plaintiff's request for review on September 23, 2008. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

support the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); Castellano v. Secretary of Health & Human Serv., 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was born on June 15, 1976 and was 26 years old on the alleged onset date of disability. [R. 19]. Plaintiff has a ninth grade education. [R. 36]. Plaintiff has previously worked as a warehouse dock loader, waiter and a short order cook. [R. 190]. His most recent employment was working 20 hours a week as a prison cook during his incarceration. [R. 37]. Plaintiff has former convictions in juvenile court for assault and battery, and joy riding. As an adult he has convictions for possession of methamphetamine and marijuana, driving with a restricted license, statutory rape of a fourteen year old girl, failure to register as a sex offender, and larceny of an automobile. [R. 360, 403]. Plaintiff served over two years of a six year sentence for statutory rape. His probation was revoked for failing to register as a sex offender and revoked a second time for grand larceny. His most recent prison release is from Boley Correctional Center in March 2008, after serving a six

month sentence. [R. 140, 250, 403, 405].

The record shows plaintiff has an extensive history of substance abuse. He reported an "almost daily use" of marijuana and alcohol from age 15, and began inhaling and smoking methamphetamine at age 17 "almost continuously" until he was incarcerated in 2003. [R. 206, 405]. He has also used crack, ice and speed. [R. 274].

On February 6, 2003, at age 26, plaintiff was in front of Channel 2 News Station. He was delusional, paranoid and physically aggressive. He was taken to the Crisis Center by Tulsa Police where he admitted to daily use of methamphetamine for a week and half following the Christmas holidays. He also admitted to using LSD, marijuana and alcohol. The Crisis Center diagnosed plaintiff with methamphetamine induced psychosis and methamphetamine dependence. He denied any previous mental illness or psychiatric treatment. [R. 206].

On February 20, 2003, plaintiff returned to the Crisis Center. He was disoriented, agitated and delusional. His mother had taken him to the center because she feared for her safety. Although plaintiff insisted that he had not used drugs since his earlier discharge from the center, he tested positive for methamphetamine. [R. 215]. The center diagnosed him with methamphetamine induced psychotic disorder and methamphetamine dependence. [R. 215]. Plaintiff alleges April 15, 2003, as the onset date of disability.

On March 24, 2008, plaintiff admitted he smoked marijuana "a couple of times" after his initial release from prison. He denied that he has experienced blackouts or withdrawal problems from alcohol and marijuana but admitted he had an inability to stop using either. [R. 405]. Plaintiff claims he has not used drugs since his last release from prison but he thinks his mental health and weight problems are due to substance abuse. He denies receiving treatment for his alcohol and drug

abuse and he does not think it will be a problem now that he is released. [R. 405]. However, he reported having hallucinations, becoming psychotic and having problems concentrating. He said these symptoms were generally well-controlled with his current medical routine of Stelazine, Cogentin, and Doxepin. He had previously taken Zyprexa but went off it when he was sent back to prison. His medications "worked ok." [R. 405].

Plaintiff filed his application for social security benefits on January 20, 2006 shortly before he was released from prison. [R. 30, 116, 124]. Plaintiff returned to prison on November 2, 2007. His hearing with the ALJ was by telephone conference from prison. [R. 36].

The adjudicated period for his disability insurance benefits is April 15, 2003 to June 30, 2007. The adjudicated period for his SSI is January 20, 2006 to February 29, 2008. Plaintiff claims bipolar disorder and antisocial personality disorder as his disabilities. [Dkt. # 18 at 1]. The ALJ issued a decision on February 29, 2008, finding plaintiff disabled, but also finding that substance use disorder was a contributing factor material to his disability. [R. 26].

At step one, the ALJ found that plaintiff had not engaged in substantial gainful employment since April 15, 2003, the onset date of his disability. [R. 17]. At step two, the ALJ determined plaintiff's severe impairments to be bipolar disorder and personality disorder. [R. 17]. The ALJ found that plaintiff's back pain and obesity were non-severe and would have only minimal effect on his ability to work [R. 17]. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that met or equaled one of the listed impairments. His mental impairments, including his substance use disorder, did not meet the requirements of listings 12.04 (Affective Disorders), 12.08 (Personality Disorders) or 12.09 (Substance Addiction Disorders). [R. 17]. He found in daily living activities, plaintiff had moderate restriction because he had "very poor

insight and judgment." In social functioning he found moderate difficulties because he was "agitated and delusional" and a registered sex offender. He found moderate difficulties with concentration, persistence and pace because he had unclear thinking and rambling conversations. He classified his two admissions to the Crisis Center on February 6, 2003 and on February 19, 2003, as episodes of decompensation. [R. 18]. The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, but because of his substance use disorder he could not complete an 8-hour work day, 5 days a week. [R. 18].

Next the ALJ determined that absent his substance use disorder, plaintiff would have mild restrictions on his daily living, moderate restrictions on social function, and moderate restrictions on concentration, persistence and pace and no episodes of decompensation. He found plaintiff could perform medium level work, limited to simple, repetitive tasks, with incidental public contact. [R. 21]. At step five, after considering plaintiff's age, education, work experience, RFC, and consulting a vocational expert, the ALJ determined that plaintiff had the capability to work as a hand packager, kitchen helper and auto detailer and that such jobs existed in sufficient numbers in the regional and national economy. [R. 25]. See Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]  [R. 25].

Plaintiff alleges three errors:

(1)   The ALJ erred in finding that drug and alcohol abuse is a contributing factor material

---

[2] The five-step sequence provides that the claimant: (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

5

>     to plaintiff's disability;
>
> (2)  The ALJ failed to perform a proper determination at step 5 of the sequential evaluation process; and
>
> (3)  The ALJ failed to make a proper credibility determination.

[Dkt. # 18 at 2].

## Discussion

In social security cases, plaintiff bears the burden of establishing a prima facie case of disability at steps one through four of the five step evaluation. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). Once plaintiff has established a disability, at step 5 the burden shifts to the Commissioner to show that the plaintiff retains the ability to do other work activity and that jobs the plaintiff could perform exist in the national economy. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

In addition, the regulations governing the CAAA provide that once the ALJ determines a plaintiff is disabled and finds medical evidence of drug addiction, the ALJ must further determine whether the drug addiction is a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535, 416.935. The key factor in determining whether drug addiction is a contributing factor is whether the plaintiff would still be found disabled if she stopped using drugs and/or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1).

Plaintiff contends that the ALJ does not have substantial evidence to support his

determination that drug and alcohol abuse is a contributing factor material to plaintiff's disability. [Dkt. # 18 at 2]. Plaintiff contends the ALJ: (1) cited no evidence to support his finding of on-going substance abuse, (2) cited no evidence that plaintiff's symptoms were disabling while abusing drugs or that they would abate sufficiently to permit plaintiff to work in the absence of substance abuse, (3) failed to consider and rely on substantial evidence that he was ever disabled, and (4) failed to weigh and treat the various low global assessment of function (GAF) scores as opinions of his treating physicians. The Court disagrees.

The ALJ set forth substantial evidence to support his conclusion that plaintiff is disabled. The ALJ found that plaintiff's disability results from a history of extensive drug and alcohol abuse, which limits him to less than full-time sedentary work. As support, the ALJ referenced plaintiff's medical records from his two admissions to the Crisis Center in February 2003, which revealed bizarre behavior and methamphetamine addiction; medical records from the Department of Corrections from August 2003 to January 2006, showing his failure to follow prescribed treatment and medication management; examination notes from January and February 2006, of on-going delusions, continued marijuana addiction and bipolar disorder despite a report of sustained full remission of amphetamine and alcohol dependence. This evidence illustrates that plaintiff's symptoms were disabling while abusing substances. The CAAA directs the ALJ to determine whether alcoholism or drug addiction is a contributing factor material to the determination that a claimant is disabled. In this instance, the ALJ cited evidence that plaintiff's regular use of prescription medication was necessary to control the psychotic symptoms resulting from his long term drug and alcohol abuse. The ALJ cited evidence showing plaintiff's inability to control his drug addiction, his tendency to relapse following remission, and the remission of his psychotic symptoms

through a controlled and professionally monitored medication plan. The ALJ first relied on evidence of plaintiff's conduct and addiction in 2003, immediately prior to the purported onset date of his disability:

> The claimant reported that he was interested in AA and NA. He indicated that he would not do meth again as he was upset with the whole experience. The claimant stated that he did not have any history of mental illness, previous psychiatric treatment, depression, suicidal ideation, mood swings, OCD symptoms, PTSD symptoms, panic disorder or medical problems. The claimant denied auditory and visual hallucinations when he was drug free. Throughout the inpatient stay, the claimant was placed on medication. Dr. Clements noted the claimant's psychosis was substance induced. The claimant was released with a more stable mood, not psychotic, no hallucinations, less agitation and aggression, and more goal directed. Dr. Clements reported that the claimant had improved concentration and focused thinking (Exhibit 2F).

[R. 23]. The ALJ noted that plaintiff was incarcerated from 2003 to 2006. Although plaintiff experienced mood disorders during his incarceration, his psychotic symptoms were controlled when he was compliant with his medication schedule. [R. 23]. When he stopped taking medication his symptoms returned. When he was 100% compliant with his medication schedule, his symptoms were controlled with no side effects. [R. 23-24].

The ALJ cited a January 26, 2006, psychological evaluation wherein plaintiff admitted to using marijuana after he was released from prison in 2006. [R. 24]. This evaluation is direct evidence of drug use during the adjudicated period. The ALJ next cited progress notes dated April 29, 2006, which noted that plaintiff was doing "good' on his prescription medication, he felt well and was experiencing no side effects. [R.24]. The ALJ also relied on the RFC conclusions reached by the physicians employed by the State Determination Services as evidence of plaintiff's drug addiction and on-going treatment. On March 10, 2006, state consultant Dr. Hannah Swallow, entered the following conclusion:

> 29 yr old male with history of bipolar disorder, anti-social personality and polysubstance abuse. Was recently released from prison and began treatment at CREOKS. Most recent exam on 01/29/06 shows he is on meds without side effects. Mood was stable. Speech was goal oriented and there were no delusions or paranoid thinking. He denied A/V hallucinations. He denied suicidal or homicidal ideation. Attention and concentration were fair. Insight and judgment were fair. He reports recent use of canabis. ADL's were not markedly restricted.
>
> MER indicates that the clmt. denies most psych symptoms (all symptoms of psychosis) when he is not using drugs.

[R. 328]. On October 17, 2006, another state consultant, Dr. Cynthia Kampschaefer, PSYD 38, reviewed all of the medical evidence in the file and affirmed Dr. Swallow's assessment of March 10, 2006. [R. 364].

As previously stated, to dismiss an application on the basis that plaintiff's drug addiction materially contributed to the determination of his disability, the ALJ needs to show that if plaintiff stopped using drugs or alcohol, he would not be disabled. See 20 C.F.R. §§ 404.1535, 416.935. The ALJ complied with this regulation. Thus, the Court finds the ALJ's decision is supported by substantial evidence.

Through this extensive analysis, the ALJ also applied the correct legal standard. First the ALJ determined that plaintiff was disabled prior to finding that his substance abuse disorder was a contributing factor material thereto. The regulations make clear that a finding of disability is a condition precedent to an application. See 20 C.F.R. §§ 404.1535(a), 416.935(a). The ALJ then made the determination that the plaintiff would not be disabled if he stopped abusing illegal drugs and maintained a regular prescription medication treatment plan. He then determined that substance abuse was a contributing factor material to his finding of disability. See 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). The ALJ also cited medical evidence from Dr. Swallow that

plaintiff's remaining impairments would not be disabling without the substance abuse, and as such, the substance abuse is a contributing factor material to the finding of disability. The ALJ determined that plaintiff's substance abuse was the original cause of his mental disorder and is a contributing factor to plaintiff's present bipolar disorder and antisocial personality disorder. He again relied on Dr. Swallow's opinion as supporting medical evidence. Accordingly, the ALJ, in evaluating plaintiff's substance abuse and mental disorders followed the applicable legal standards and his conclusions were supported by substantial evidence. See, e.g. Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001).

Plaintiff contends the ALJ erred in not weighing plaintiff's low GAF scores as opinions of treating physicians. [Dkt. # 18 at 4]. Plaintiff's counsel relies on the testimony of the vocational expert who agreed that a person with a GAF score of 44 would have difficulty sustaining full time employment. [R. 51]. Plaintiff points to evidence that shows plaintiff's GAF score ranged from 20 to 50. After release from prison, plaintiff's GAF score ranged from 31 to 40 and in an evaluation conducted in January 2007, plaintiff's GAF score was 44. Plaintiff admits the ALJ recognized that plaintiff's GAF score was 44, and that his score indicated "serious symptoms" but faults the ALJ for not relying on those scores in evaluating plaintiff's RFC.

The Court finds the ALJ did not error in failing to address plaintiff's GAF scores ranging from 20 to 50 in his RFC assessment, because the ALJ did take into consideration medical evidence of plaintiff's psychological evaluation, which consists of factors similar to those used to arrive at GAF scores. Moreover, the record shows a difference of opinion among those clinicians who evaluated plaintiff's GAF scores. Thus, the evidence was controverted. The Tenth Circuit has stated that, "a low GAF score does not alone determine disability, but it is instead a piece of evidence to

be considered with the rest of the record." Petree v. Astrue, 260 Fed.Appx. 33, 42 (citing Howard v. Comm'r of Soc.Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."))[3]. In essence, plaintiff contends that his GAF scores of 44 qualify him as disabled. A score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, . . .) OR any serious impairment in social, occupational or school functioning (e.g., . . . unable to keep a job)." Id. at 41 n.5. However, clinicians who rated plaintiff's GAF score did not indicate that he could not work. Because a score of 44 may not relate to plaintiff's ability to work, the score, standing alone, without further explanation, "does not establish an impairment severely interfering with an ability to perform basic work activities." Eden v. Barnhart,109 Fed.Appx. 311, 314 (10th Cir. 2004) (unpublished) (a GAF score of 50, standing alone, without further explanation, does not establish an inability to perform basic work activities.)[4]

The ALJ further explained that it was the non-compliance with the medication plan that caused plaintiff's disabling mental disorders rather than any purported side effects from taking the medication. The ALJ relied on the following evidence.

> On July 25, 2005, the claimant presented with disorganized speech and an agitated behavior. The claimant agreed to take psychotropic medications as prescribed. The claimant's behavior and speech was reportedly better on July 27, 2005. The record showed on July 29, 2005, that the claimant had a pattern of medication non-compliance which led to psychotic episodes. The claimant stated he no longer wanted to take his medications on August 3, 2005 because of sleepiness and heat

---

[3] A GAF score is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning.  See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000).

[4] The GAF scale is used by clinicians to report an individual's overall level of functioning. See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 345 (4th ed.2000). The scale does not evaluate impairments caused by physical or environmental factors. See Bellamy v. Massanari, 29 Fed. Appx. 567 (10th Cir. 2002) (unpublished).

> intolerance. On August 8, 2005, the claimant refused his medication and lacked an appetite. Examination on August 10, 2005 revealed a depressed mood. The claimant agreed to cooperate with proposed treatment. The claimant had no complaints on August 16, 2005. The record did not show any psychological problems through his discharge date in January 2006. (Exhibit 4R)
>
> . . . .
>
> Progress notes dated April 29, 2006, revealed the claimant was doing "good" on his medication and reportedly felt well and experienced no side effects from the medications. He was noted as alert, cooperative, and stable. (Exhibit 8F). The record reflects no further treatment notes for the allegedly disabling symptoms. This lack of treatment is not what one would expect for a totally disabled individual.

[R. 24]. The ALJ gave specific reasons for his findings, with references to the record in his RFC determination, and thus his determination was supported by substantial evidence.

As her second assignment of error, plaintiff contends the ALJ failed to perform a proper determination at step five of the sequential evaluation process. [Dkt. #18 at 4]. Plaintiff contends the ALJ erred in failing to include specific strength demands in his hypothetical to the vocational expert because plaintiff's back injury would raise issues of his ability to sit, stand, or walk, and how often he could stoop or bend. [Dkt. # 18 at 4]. The Court finds no error in this regard. In formulating his hypothetical question and in determining plaintiff's RFC, the ALJ did not place any restrictions due to plaintiff's back injury because he found that it was not a limiting conditions. The ALJ stated:

> The claimant has alleged disability, in part, due to back pain and obesity. The claimant was involved in a motor vehicle accident on March 8, 2006. X-rays of the cervical spine and lumbar spine on March 9, 2006, were unremarkable. X-rays of the thoracic spine revealed mild-to-moderate scoiliotic concavity. Dr. Snider assessed the claimant with lumbar and cervical strain and myofascial irritation. He placed the claimant in physical therapy. On April 20, 2006, Dr. Snider gave the claimant "good prognosis as he was in remission of most symptoms after a favorable response to treatment (Exhibit 7F). The Administrate Law Judge finds that this impairment is considered non-severe, as medical and other evidence establish only a slight

>  abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

[R. 17]. Plaintiff has failed to offer any substantiating evidence that plaintiff's back injury caused any limitation in his capacity to perform medium exertional work. The Court finds that the ALJ's determination that plaintiff's impairments or combination of impairments do not limit his ability to work is supported by substantial evidence. The ALJ's assessment of plaintiff's RFC is consistent with that of the mental RFC assessment made by the consultative examiner. The hypothetical question propounded to the vocational expert is also consistent with the ALJ's findings as to plaintiff's RFC. The ALJ properly considered all the evidence of record and relied on the evidence as a whole to formulate plaintiff's RFC. He gave specific evidentiary reasons to support his conclusion that plaintiff had the RFC to perform medium exertional work, with specific limitations. The ALJ then turned to the vocational expert for his expert opinion, which he gave. Moreover, plaintiff did not mention the vehicle accident or any purported back injury caused by an accident during the administrative hearing which is further evidence that plaintiff's injury to his back is not a limiting factor to his ability to work.

Plaintiff contends the ALJ ignored the vocational expert's admission that a person whose concentration is impaired by 50 percent on any one work day would have difficulty sustaining employment. [Dkt. 18 at 5]. The Court finds no merit to this claim. The ALJ did not err in failing to address the vocational expert's answer regarding a person with 50 percent impairment in concentration, because substantial evidence supports the ALJ's determination that plaintiff could work full time if he complied with the treatment plan prescribed by his physician. "The ALJ need include in his hypothetical questions only those alleged impairments that the ALJ accepts as true."

Talley v. Sullivan, 906 F.2d 585, 588 (10th Cir. 1990). In this instance, the ALJ determined that the plaintiff had only moderate deficiency in concentration, persistence, or pace and the ALJ's findings are supported by substantial evidence.

Lastly, plaintiff contends the ALJ failed to perform a proper credibility determination. [Dkt. # 18 at 6]. Plaintiff contends that inconsistencies in the ALJ's credibility findings leave his decision unsupported by substantial evidence. The Court disagrees. In considering the credibility of plaintiff's testimony, the ALJ reviewed plaintiff's treatment plan to show that when he failed to comply with his medical treatment, his symptoms returned. The ALJ relied on examination notes wherein plaintiff admitted that the medication alleviated his symptoms and that the medication was "working ok." The ALJ noted that both Dr. Swallow and Dr. Kampschaefer gave opinions that supported a finding of "not disabled." He also noted that plaintiff worked as a prison cook for 20 hours per week. Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished). Such a link exists here.

## Conclusion

The Court finds that the ALJ's decision is supported by substantial evidence in the record and the correct legal standard was applied. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

IT IS SO ORDERED this 28th day of July, 2010.

T. Lane Wilson
United States Magistrate Judge

14